# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **DEBORAH KRESSE** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO: 16-cv-** |
| **HARTFORD LIFE AND** | : | |
| **ACCIDENT INSURANCE CO.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : | |

## COMPLAINT

Plaintiff, Deborah Kresse, hereby brings a civil action against Defendant, Hartford Life and Accident Insurance Co., based on the following:

### The Parties

1.  Plaintiff, Deborah Kresse (Hereinafter "Plaintiff" or "Ms. Kresse"), an adult individual, is a citizen of the State of Delaware, who presently resides at 627 Abbott Drive, Milford DE, 19963

2.  Defendant, Hartford Life and Accident Insurance Co., (Hereinafter "Defendant" or "The Hartford") is, upon information and belief, an insurance company licensed to do business in the State of Delaware.  Upon information and belief, The Hartford's principal mailing address for purposes of effectuating service of process is, PO Box 14301 Lexington Kentucky 40512.

3.  At all times material hereto, Plaintiff was employed by the State of Delaware. Pursuant to Plaintiff's employment with the State of Delaware, Plaintiff was eligible to receive

long term disability benefits pursuant to a Hartford-sponsored Group Long Term Disability Insurance Policy.

4.      Jurisdiction is proper in this matter under Title 28, United States Code, Section 1332, in that there is complete diversity of citizenship among the parties, and the amount at issue is in excess of $75,000.00, exclusive of costs and interest.

5.      Venue is proper in this matter pursuant to Title 28, United States Code, Section 1391(a), in that at all times material hereto, the Plaintiff is a citizen of the State of Delaware, and The Hartford regularly conducts its insurance business in the State of Delaware.

6.      At all times material hereto, Defendant acted by and through its agents, servants, and employees who acted within the scope of their authority from Defendant.

## THE FACTS
## PROCEDURAL BACKGROUND

7.      The allegations in paragraphs 1 through 6 are incorporated by reference as if fully set forth herein.

8.      At all material times hereto, Ms. Kresse was continuously employed as a Senior Services Administrator for the State of Delaware through October 2012.

9.      At all material times hereto, Ms. Kresse has been eligible for benefits under the State of Delaware's Group Long Term Disability Plan.

10.     The Policy provides in pertinent part as follows:

> ***"Disability" or "Disabled" means***
> 1) *during the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation;*
> 2) *for the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre-disability Earnings;*

> 3) *after that, you are prevented from performing one or more of the Essential Duties of Any Occupation."*

11.     Inasmuch as the State of Delaware is a governmental entity, said policy does not qualify as an ERISA Plan, and is thus not governed by ERISA.

12.     As set forth in greater detail below, since October 2012, Ms. Kresse has been unable to perform the material and substantial duties of her job or any other profession.

13.     As the record reflects, at all material times since that date, Ms. Kresse has been physically and medically unable to perform the material and substantial duties of her pre-disability job as a senior services administrator for the state of Delaware or any other job.

14.     Ms. Kresse continues to suffer from marked physical, mental and emotional effects of fibromyalgia; the cumulative result of which has precluded Ms. Kresse from returning to any type of gainful employment.

15.     The Hartford initially *approved* Ms. Kresse for long term disability benefits in April 2013.

16.     Via letter dated January 29, 2015, The Hartford informed Ms. Kresse that her long term disability benefits were being terminated as of April 18, 2015.

17.     Ms. Kresse, through counsel, appealed The Hartford's termination of her benefits via letter on July 1, 2015.

18.     The Hartford issued its final denial of Ms. Kresse's long term disability claim on August 13, 2015.

19.     As reflected in the medical records and set forth herein, at no time since October 2012, has Ms. Kresse been able to perform the material and substantial duties of her pre-disability job as a senior services administrator or any other position.

20.     Ms. Kresse remains completely disabled from being able to engage in full-time gainful employment, and as set forth herein, The Hartford's decision to terminate Ms. Kresse's long term disability benefits was done in disregard of the presented medical evidence and done so without a reasonable basis.

## PLAINTIFF'S DISABILITY

21.     The allegations in paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

22.     In or about 2010, Ms. Kresse first began to experience the symptoms of fibromyalgia which as documented, included extreme fatigue, tender points to the touch and wide-spread pain. As a result, Ms. Kresse's primary care physician, Dr. Zarraga, recommended that she seek treatment with a specialist.

23.     Ms. Kresse began treating with Rheumatologist, Dr. Maged Hosny in October 2010 for her fibromyalgia diagnosis.

24.     Dr. Hosny treated Ms. Kresse for her increased symptoms during her initial application for and approval of long term disability benefits, and continues to treat Ms. Kresse today.  (See Dr. Hosny's Representative Office Notes dated 8/23/2013 through 06/11/2015, collectively attached as Exhibit "A1 – A38").

25.     By way of illustration, in his October 2014 Office Note, Dr. Hosny stated, *"[Ms. Kresse] continues to be symptomatic.  She continues to have chronic widespread pain described as dull aching, worse with activities, slightly relieved with rest.  She continues to have generalized body stiffness, fatigue, insomnia and short term memory loss."* (See Exhibit "A12-14").

26.     Despite providing ongoing medical documentation illustrating her disability, The Hartford terminated Ms. Kresse's long term disability benefits on January 29, 2015.

## DEFENDANT'S TERMINATION OF PLAINTIFF'S
## LONG TERM DISABILITY BENEFITS

27.     The allegations in paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

28.     At all material times hereto, Ms. Kresse has continued to provide Defendant with medical documentation supporting and confirming her ongoing total disability, as per the terms of the Policy.

29.     As stated above, via letter dated January 29, 2015, The Hartford informed Ms. Kresse that she "*is not prevented from performing the essential duties of Any Occupation...*" (See The Hartford's Termination Letter dated 1/29/2015, attached as Exhibit "B").

30.     The Hartford based it termination, in large part, on a form that was completed by Dr. Hosny's office indicating that Ms. Kresse could sit for upwards of four hours a day, an increase from a previously completed form.

31.     What The Hartford failed to recognize is the varying nature of Ms. Kresse's disability – given the unpredictable manifestations of her condition, while she may be able to sit for a number of hours on a given day, that does not mean she could do the same every day, nor in light of her condition, does it mean she could concentrate on a specific task while she was seated during that time.

32.     Ms. Kresse, through counsel, appealed The Hartford's determination on July 1, 2015.

## PLAINTIFF'S APPEAL OF DEFENDANT'S TERMINATION OF BENEFITS

33.     The allegations in paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

34.     Via letter dated July 1, 2015, Ms. Kresse appealed The Hartford's decision to terminate her long term disability benefits.  (See Ms. Kresse's Appeal Letter dated 7/1/2015, attached as Exhibit "C").

35.     Included with Ms. Kresse's appeal was a narrative report prepared by Ms. Kresse's treating rheumatologist, Dr. Hosny in which he expressed his position on Ms. Kresse's ongoing work abilities.

> *"I have been Ms. Kresse's treating rheumatologist since October of 2010.  During this time, Ms. Kresse has been rescheduled for examination generally every 2-4 months for treatment relating to Fibromyalgia.*
>
> *I have been asked to comment on Ms. Kresse's disability status and ability to work.  I have also been asked to review and comment on the disability insurer's termination letter.*
>
> *I am very familiar with Ms. Kresse given that I have been treating her for almost five years.  So it is somewhat surprising in reading Hartford's letter but they are stating that I have released Deborah to return to work.  I reviewed Deborah's chart and can state with certainty that I never relaeased Deborah to return to work ever since the first went out on disability.*
>
> *It appears that in June of 2014, at Deborah's request, Linda Ashley, FNP completed a disability form.  Nurse Ashley estimated Deborah could sit/stand and walk for perhaps 2 hours a day.  In December, Nurse Ashley checked off that Deborah could sit for upwards of 4 hours a day.*
>
> *Assessing how long a person can sit or stand in a particular day can get tricky.  Deborah is in constant pain and even if she can sit for a few hours a day, I would not expect her to be able to sufficiently concentrate to be able to function to a work like setting…*
>
> *However to perhaps better quantify Deborah's sit/stand capabilities, I referred her for a functional capacity evaluation.  I specifically wanted Deborah to undergo an evaluation over successive days because of the nature of her diagnosis.*
>
> *Deborah was tested on June 8 and June 9, 2015.  The evaluator assessed Deborah's exertional capabilities as being*

> *"below sedentary". In not taking account for Deborah's non-exertional issues, I do believe this evaluation very well may even be overstating her capabilities. Notwithstanding, it does corroborate my assessment that she remains completely disabled from returning to any type of competitive work environment."*

(See Dr. Hosny's Narrative Report dated 6/22/2015, attached as Exhibit "D").

36.     In addition, Ms. Kresse provided updated office notes from her more recent office visits with Dr. Hosny. (See Office Note dated 2/5/2015 and 6/11/2015, collectively attached as Exhibit "A15-A39").

37.     Ms. Kresse also included Dr. Hosny's Rx for a two day Functional Capacity Evaluation which was referenced in Dr. Hosny's aforementioned letter and which found Ms. Kresse's functionality to be *"below sedentary"*. (See Dr. Hosny's FCE Rx and FCE test results, collectively attached as Exhibit "E").

38.     Finally, on appeal, Ms. Kresse submitted a personal statement in which she highlighted her non-exertional limitations which prevent her from performing any job.

> *"To Whom it May Concern:*
>
> *I was diagnosed with Fibromyalgia by my Rheumatologist, Dr. Maged Hosny, in October, 2010.*
>
> *...*
>
> *Fibromyalgia Fog*
>
> *In addition to being distracted by physical symptoms, I also suffer from "Fibromyalgia Fog", causing me extreme difficulty concentrating (feels like "things are not connecting"), and issues with short-term memory. This is very frustrating and embarrassing, especially when someone becomes persistent in trying to explain something to me during a Fibromyalgia Fog episode. It causes me to lack patience and be irritable. Fibromyalgia Fog also causes me to have problems with reading comprehension and can happen at any time without warning.*
>
> *... Sometimes when I start a task, I am unable to finish due to pain*

> *and/or fatigue, leaving it to my husband to have to complete it. I often have to postpone tasks requiring concentration, such as reconciling my checkbook, paying bills, making business phone calls or handling correspondence until a day when I am not experiencing Fibromyalgia Fog, and am able to concentrate.*
>
> ...
>
> *I remain unable to work on a full-time sustained basis because I experience widespread pain and fatigue in various degrees almost every day which distract me from work and make it difficult to sit, stand or walk for very long. In addition, I suffer from Fibromyalgia Fog which makes me unable to concentrate and causes me to have reading comprehension problems. I am unable to be depended upon to perform work assignments because I never know when pain, fatigue or the cognitive issues of Fibromyalgia Fog will prevent me from being able to attend work or, if I am able to attend, to be able to perform the work required."*

(See Ms. Kresse's Personal Statement dated 4/9/2015, attached as Exhibit "F").

39.     Despite providing an abundance of medical and other evidence illustrating Ms. Kresse's disability, The Hartford denied Ms. Kresse's appeal on August 13, 2015.

## DEFENDANT'S DENIAL OF PLAINTIFF'S APPEAL FOR BENEFITS

40.     The allegations contained in paragraphs 1 through 39 are incorporated by reference as if fully set forth herein.

41.     Via letter dated August 13, 2015, The Hartford issued its final denial of Ms. Kresse's appeal for long term disability benefits.  (See The Hartford's Denial Letter dated 8/13/2015, attached as Exhibit "G").

42.     The Hartford based its denial upon the paper review of a hired peer review physician who did not personally examine Ms. Kresse.   As in the initial termination, The Hartford, by and through its hired paper-reviewing physician, failed to properly assess the exertional as well as non-exertional limitations of Ms. Kresse's disabling medical condition.

43.     The intentionally constrained and biased paper review of Ms. Kresse's claim, her medical records, and her conditions were unfair, inappropriate, misleading, and did not constitute anything remotely resembling an "independent medical evaluation."

44.     The Hartford interpreted the medical information in a manner that best suited its purposes and interests, a claim termination.

45.     The Hartford, quite arbitrarily and capriciously, and without ever having examined Ms. Kresse, usurped the medical opinions of her treating providers in reaching the conclusion that Ms. Kresse is not disabled from her pre-disability position or any other position.

46.     Given the scope, extent, and nature of Ms. Kresse's condition and the overwhelming medical records and support provided by her treating rheumatologist, it is absolutely wrong, unfair, and deceptive to ignore Ms. Kresse's treating specialist's opinion.

## BREACH OF DISABILITY INSURANCE CONTRACT

47.     The allegations in paragraphs 1 through 46 are incorporated by reference as if fully set forth herein.

48.     The Hartford issued a long term disability insurance policy, "The Policy", and had a duty to provide coverage to Ms. Kresse, if she was limited from performing the material and substantial duties of her job due to sickness or injury.

49.     Ms. Kresse was and remains totally disabled from performing *"the material and substantial duties"* of her position or any other position due to her ongoing, chronic, and unrelenting medical condition and symptoms, the aggregate effect which causes Ms. Kresse to be unable to perform her job duties or any other job duties, and thus, establishes a continuing, compensable disability under the Policy.

50.     As outlined above, The Hartford breached its duty under the Policy and law by arbitrarily, capriciously, erroneously, incorrectly, and improperly terminating Ms. Kresse's long term disability benefits effective April 18, 2015, and ongoing.

51.     Defendant completely failed to provide a "full and fair review" and, as above, the scope and extent of its violations were so significant and egregious and so clearly affected the claim decision (and the integrity of the claim decision), that a substantive remedy in the form of an award of long term disability benefits is warranted.

52.     The decision to deny Ms. Kresse's disability benefits resulted in a monetary savings to The Hartford, and, thus, was tainted by a conflict of interest.

53.     As a direct result of the Defendant's breach of the policy and its wrongful denial of benefits, Ms. Kresse has been denied payment of long term disability benefits, which payments plus interest she is entitled to recover and seeks herein.

54.     As a direct result of the Defendant's breach of the policy and wrongful termination of benefits, Ms. Kresse has been caused to retain counsel and incur attorney's fees and incur other costs and expenses which she is entitled to recover and seeks recovery of these attorney's fees, costs, and expenses herein.

55.     As a direct result of Defendant's arbitrary and capricious and baseless decision to terminate Ms. Kresse's disability benefits and obtain monetary savings for The Hartford, and the overall erroneous and egregious handling of Ms. Kresse's disability claim and, thus, the accompanying, legitimate concern that Defendant will seek retribution and move to deny Ms. Kresse's disability claim if she is reinstated under the Plan, Ms. Kresse is entitled to and seeks herein payment of full and complete long term disability benefits available to her under the Plan.

**WHEREFORE**, Plaintiff, Deborah Kresse, herein requests that judgment be entered in her favor and against Defendant, The Hartford Life and Accident Insurance Company, and for this Court to award her retroactive and ongoing payment of her long term disability benefits, attorneys' fees, costs, and interest as permitted under the law, and any other equitable relief that this Court deems appropriate.

Respectfully Submitted,

ROSEN, MOSS, SNYDER & BLEEFELD, LLP

MARC H. SNYDER, ESQUIRE
Attorneys for Plaintiff,
Deborah Kresse